(Decided May 13th, 1864.)

---

## John O. Price *vs.* John R. Moore & others.

Act of 1798, ch. 101, sub-ch. 2, sec. 13, and sub-ch. 15, sec. 17: Probate of Will—Caveat: Dismissal of Issues without Trial—Effect of.—Where plenary proceedings are instituted in the Orphans' Court to test the validity of a will, and issues are sent to a Court of Law, which are there dismissed by order of the caveator before trial; the subsequent admission of the will to probate, will be treated as done *"without contest"* within the meaning of the Act of 1798, ch. 101, sub-ch. 2, sec 13.

And it is competent for the Orphans' Court to revoke and annul such probate, and direct new issues to be made up, for the purpose of ascertaining whether the paper propounded for probate was legally executed, and a valid will.

APPEAL from the Orphans' Court for Baltimore City :

On the 8th day of May 1857, a *caveat* was filed by Mrs. Frances T. D. Taylor, in the Orphans' Court for Baltimore City, contesting the validity of the will of Mrs. Charcilla C. D. Owings, which two days before had been offered for probate by John O. Price, the appellant in this case. On the same day Price filed an answer to the *caveat*, and the attesting witnesses to the will were examined and cross-examined before the Court, by the counsel for the respective parties, and their evidence committed to writing. On the 30th of July in the same year, on the application of Mrs. Taylor, issues were framed and sent for trial to the Superior Court of Baltimore City, whence they were removed to the Circuit Court for Baltimore County. While the issues were pending in that Court, Mrs. Taylor by her written order directed the case to be dismissed. The appellant thereupon filed with the Orphans' Court a short copy of the docket entries showing such dismissal, and on the 26th of March 1859, the Orphans' Court passed the following order:

"On the 8th day of May, A. D. 1857, a certain Frances T. D. Taylor having exhibited and filed in this Court a petition or *caveat* against the said last will and testament of the said Charcilla C. D. Owings, together with other proceedings in the premises, as will be more fully seen by reference to 'Appeals and Issues,' liber 'D.M.P., No. 5, folio 130,' &c., being one of the records in the office of the Register of Wills for Baltimore City, wherein will be shewn that certain issues were made up and sent to the Superior Court for Baltimore City, on the 30th day of July ir the year last aforesaid, and from thence transferred to the Circuit Court for Baltimore county for trial, and by said latter Court the said *caveat* was dismissed, as will be seen by a copy of the docket entries of said Court, filed in this Court this 26th day of March 1859. Whereupon the Orphans' Court for Baltimore City order and decree, that the aforesaid paper writing be admitted in this Court

as the last will and testament of the said Charcilla C. D. Owings, deceased.''

On the 19th of April 1861, the appellees filed their petition asking that the case might be again examined and heard, and the order of 26th of March 1859 rescinded, and said will adjudged not to be the last will and testament of said Charcilla. The appellant, Price, answered this petition, and afterwards, on the 28th of May 1861, the Orphans' Court passed an order by which new issues were framed, and directed to be transmitted for trial to the Superior Court of Baltimore City. From this order the present appeal is taken.

The cause was argued before BOWIE, C. J., and GOLDS-BOROUGH, and COCHRAN, J.

*I. Nevitt Steele,* for the appellant:

It will be contended for the appellant, that a *caveat* having been filed by Mrs. Taylor, one of the next of kin, against the probate of Miss Owings' will, an answer under oath having been put in by appellant, the three witnesses to the will having been examined by the appellant, and cross-examined by the counsel of Mrs. Taylor, and their evidence having been duly recorded—issues having been granted to the *caveator*, and afterwards dismissed by her—and the Orphans' Court having then, by solemn decree, admitted the will to probate, and that decree never having been appealed from,—the probate was conclusive and binding upon all the world.

The probate of a will is in its nature a proceeding *in rem.* If the will be proved in '' common form,'' that is, by the oath of the executor, and such evidence only as may be necessary to establish a will of personality, then the probate may be opened and controverted at any time within thirty years; but if the will be proved in '' solemn form,'' that is, after notice to next of kin and examination of all the witnesses, &c., the probate is conclusive. This was the

law of England, as originally adopted in this State, and was not materially changed by the Act of 1798, chap. 101, the chief office of which statute was rather to reduce into system, than to alter, the then existing testamentary law. By the 2d sub-chap., sec. 13, of that statute, it is provided that if probate of any will "be taken as aforesaid, without contest," the case may be again examined, &c. What is meant by this provision, is to be ascertained by reference to the 12th and other preceding sections; and an examination of them will shew that, while they contain some special provisions on the subject of notice to next of kin, the 13th section was intended, substantially, to embody and carry out the English law as to proof in "common form," and proof in "solemn form," as then understood and practised under in this State.

In a case like this, where the conscience of the appellant has been applied to, where witnesses have been cross-examined, and their depositions put on record, and where a formal decree has been made by the Orphans' Court, the probate cannot be said, in any just sense, to have been taken without contest. *Act of* 1798, *ch.* 101, *sub-ch.* 2, *secs.* 11 and 12. Also, 15*th sub-ch., secs.* 16, 17 and 20. 1 *Williams on Executors*, 205, 209, 210. *Lib. Ed., ch.* 3, *secs.* 3 and 4, *pp.* 275, 280, 282. *Toller's Law of Executors*, 56, 57. 2 *Greenleaf's Evidence, sec.* 672.

*Reverdy Johnson* and *A. W. Machen*, for the appellees:

The Orphans' Court, in passing the order of 26th March 1859, assumed that the issues of 30th July 1857, were no longer in existence. If the fact was otherwise, and those issues were still outstanding, the Court, it is clear, had no power to admit the will to probate, and the order of 26th March 1859, is a nullity. *Pegg vs. Warford*, 4 *Md. Rep.*, 394. Since the present appeal was taken, the Judge of the Circuit Court for Baltimore County, before whom those former issues were to be tried, and whose certificate is made by law the only competent evidence of the fate of them,

47      v. 21

(1798, ch. 101, sub-ch. 8, sec. 20,) has adjudged that they are still depending and awaiting trial.

It is certain no trial has ever yet been had of the question of the genuineness and due execution of the will. The next of kin of Miss Owings are entitled to have the facts passed upon by a jury in some form of procedure. Upon the supposition that the Orphans' Court had jurisdiction to admit the will to probate when it did, the only mode of remedy left to them was to ask the same Court to open the probate, and allow an examination.

The Orphans' Court acceded to the prayer of the appellees and authorized a trial by jury. Whether it had power to do so, assuming that the old issues were not in existence, is the question of the present case.

1. The probate was taken without contest, and the statute expressly declares that in such a case the Court, upon the matter being brought before them by petition at any time afterwards, shall again examine and hear it; and if they then, on hearing both sides, adjudicate against the will, they shall revoke any letters of administration which they may have granted upon it. Laws, 1798, ch. 101, sub-ch. 2, sec. 13.

That there had been a contest, is not to the purpose. There was no contest going on at the time the will was admitted to probate. The Court did not "determine according to the testimony on both sides;" the decree was not passed upon any issues joined *inter partes*—it was the adjudication of no controversy.

Perhaps the Orphans' Court held that there was evidence that Mrs. Taylor, with the sanction of the Circuit Court, had withdrawn her *caveat:* at any rate they did not consider the *caveat* as being before them. They did not overrule it, or pass upon it in any way. They declare that they are acting in a case where there is now no *caveat*—and if no *caveat*, no contest.

The examination of witnesses, after *caveat* filed, and with

both parties in Court, does not constitute a plenary proceeding. *Barroll vs. Reading,* 5 *H. & J.,* 175.

2. But the power of the Court to revoke a probate is not confined to probates granted without contest, but is general and unrestricted. This was distinctly held in *Clagett vs. Hawkins,* 11 *Md. Rep.,* 381, 385. The power of merely revoking letters of administration has been limited by the decision in *Edwards vs. Bruce,* 8 *Md. Rep.,* 389, to thirty days, but the right to undo a probate, and as a consequence of this act revoke letters granted upon or with the will, remains as broad and beneficial as it ever was laid down in England. *Clagett vs. Hawkins,* 11 *Md. Rep.,* 387. *Robey vs. Hannon,* 6 *Gill,* 463; and compare the argument in this case on the part of the appellant, p. 468, with the decision in *Clagett vs. Hawkins.*

The power to set aside a forged will at any time, must reside in some Court, or there would be a great failure of justice: and in England, as well as in other jurisdictions where, as here, Courts of a limited and special, but exclusive jurisdiction, take probate of testamentary papers, it has been clearly held that from the necessity of the case the jurisdiction to approbate, implies jurisdiction to undo the act of approbation, and reject. *Wentworth, Office of Exec.,* 111, 112. 1 *Williams' Exec.,* 470, (*Ed. of* 1849,) *Campbell vs. Logan,* 2 *Bradf.,* 90, 92, a recent well considered decision of the Surrogate's Court of New York. *Bowen vs. Johnson,* 5 *Rhode Island Rep.,* 119, 120. *Allen vs. Dundas,* 3 *T. R.,* 125.

All the Maryland decisions are in harmony with this doctrine. *Robey vs. Hannon,* 6 *Gill,* 463. *Clagett vs. Hawkins,* 11 *Md. Rep.,* 381. *Raborg vs. Hammond,* 2 *H. & G.,* 51. And see the paragraph in *Bac. Ab., tit. Executors and Administrators, E.* 12, referred to in the last cited case.

It is to be observed that the 13th sec. of sub-ch. 2, of the Act of 1798, ch. 101, (above referred to,) in authorising the revocation of letters granted upon a will proved without contest, seems to assume the existence of a general

power in the Court to undo the probate, and goes on to provide particularly for the course to be pursued with respect to the letters of administration.

A verdict upon an issue concludes persons who were not parties to the proceeding; but this is not on the ground that it operates as a judgment, for it is no judgment, (*Warford vs. Colvin*, 14 *Md. Rep.*, 532;) but the statute makes it conclusive evidence to the Orphans' Court of the particular fact which it finds, and no other verdict can be taken on that point, because the law cannot contemplate the possibility of the co-existence of two pieces of evidence, both conclusive, and yet different. Hence, a sentence of probate passed upon issues, though in its own nature as capable as any other of being set aside, may yet be practically unassailable, for the reason, that on the application to set it aside, equally as upon the question of passing it, the verdict is conclusive evidence of the facts embraced in its finding.

A mere probate, whether in common or solemn form, with or without consent, could not, without departing from the first principles of all jurisprudence, be held conclusive upon next of kin who were not parties to the proceeding. *Walker vs. Perryman*, 23 *Georgia*, 309. *Hunter vs. Hatton*, 4 *Gill*, 122.

GOLDSBOROUGH, J., delivered the opinion of this Court :

The appellant on the 6th day of May 1857, filed in the Orphans' Court for Baltimore City for probate, a paper writing purporting to be the last will and testament of Miss Charcilla Owings. On the 8th day of May, Mrs. Frances Taylor, alleging herself to be a sister and one of the next of kin of Mrs. Owings, filed her petition or *caveat* against the above paper writing, denying that it was the last will and testament of the deceased, and praying that it be not admitted to probate. To this *caveat* the appellant filed his answer.

Before any adjudication however, the caveator, Mrs. Taylor, prayed the Court to frame issues and transmit them to the Superior Court of Baltimore City, and the issues named in the record were accordingly framed and transmitted, and it was further ordered, that Mrs. Taylor be plaintiff, and John O. Price be defendant.

These issues were subsequently removed for trial to the Circuit Court for Baltimore County, and on the 25th day of January 1859, the following entry appears on the docket of this last named Court: "Dismissed, order of plaintiff filed." On the 26th day of March of the same year, the Orphans' Court, reciting in their order or decree that the *caveat* had been dismissed, admitted to probate the paper writing purporting to be the last will and testament of Miss Owings. On the day of this decree, the appellees came into the Orphans' Court and filed their petition, alleging that the paper writing which had been admitted to probate, was not the genuine last will and testament of Miss Owings, and prayed that the probate thereof then granted, might be reconsidered, and that the issues suggested by the petitioners and appended to their petition, be framed and sent to the Superior Court of Baltimore City for trial. Which application was granted by the Court, and from its order this appeal was taken.

The appellant resists this order, and contends that the probate of the will was had in solemn form on proceedings which put the validity of that paper in issue, and that it was therefore final and conclusive.

On the other hand the appellees insist that it was allowed, not upon the plenary proceedings of Mrs. Taylor, but in common form without contest, and under these circumstances, that the Orphans' Court was authorised by the Act of 1798, ch. 101, sub-ch. 2, sec. 13, to direct other issues to be made up upon the application of any other party interested in contesting the validity of that paper. The material question, whether the will was admitted to probate in common or solemn form, is presented by these propositions.

The 17th sec., sub-ch. 15, of the above mentioned Act, authorises the Orphans' Court in cases of contest by plenary proceedings, to give judgment or decree upon bill and answer, or on the bill, answer and depositions or finding of a jury; but the 13th sec., sub-ch. 2, provides for the admission of a will to probate without contest, and in such case, authorises the Court on petition of a party interested, to revoke the letters and direct further proceedings. This record shows that Mrs. Taylor instituted proceedings for the purpose of contesting the validity of the paper admitted to probate, but it also appears that these proceedings were terminated without the finding of a jury, or any adjudication of the questions presented; and that she dismissed them, thereby abandoning the contest and ceasing to be a party thereto. The decree or order allowing the probate, not only recites the fact that her proceedings, including the *caveat*, were dismissed, but it assumes that they were no longer before the Court for any purpose whatever. In that respect we think the decree of the Orphans' Court free from objection, for we have said in the case of *Price vs. Taylor, ante p.* 356, that the dismissal of issues necessarily results in a return of the case to the Orphans' Court, where all persons interested would have the right to become contesting parties; and further, that the effect of Mrs. Taylor's order to dismiss the issues, as to the validity of this will then pending, was to place the case precisely as it was before she filed her *caveat.* We are clearly of opinion that the probate of the will was had in common form, and within the meaning of the Act, without contest. Having reached that conclusion, it follows as a matter, of course, that it was competent for the Orphans' Court, under the 13th section, sub-ch. 2, to revoke and annul the probate and direct issues to be made up, for the purpose of ascertaining whether the paper propounded, was legally executed, and a valid will.

The order from which this appeal was taken, will be affirmed and cause remanded.

*Order affirmed with costs to appellees.*

(Decided May 13th, 1864.)